**UNITED STATES of America, Plaintiff,**

v.

**129.4 ACRES OF LAND, MORE OR LESS IN the COUNTY OF YUMA, STATE OF ARIZONA, Fred W. Kamrath, et al., and Unknown Owners, Defendants.**

**No. CIV 75–166 PHX–CAM.**

United States District Court,
D. Arizona.

May 26, 1976.

William C. Smitherman, U. S. Atty., Dist. of Arizona, Asst. Atty. Richard S. Allemann, Phoenix, Ariz., for plaintiff.

Bruce E. Babbitt, Atty. Gen., State of Arizona, Penterman, Corbet & Grace, Phoenix, Ariz., for Leo F. and Lucille Y. Corbet as to Parcel No. 2.

Rolle, Jones, Benton, & Cole, Yuma, Ariz., for Citrus Care, Inc., Fred W. Kamrath & Vera M. Kamrath, & First National Bank of Arizona.

Westover, Choules, Shadle & Bowen, Yuma, Ariz., for Gilbert K. Ranney re Parcel No. 4.

Thaddeus G. Baker, Yuma, Ariz., for Yuma Mesa Irrigation & Drainage Dist.

## OPINION and ORDER

MUECKE, District Judge.

IT IS HEREBY ORDERED that this court, having received and considered defendant Yuma Mesa Irrigation And Drainage District's (hereinafter referred to as the "District") Motion for Judgment on the Pleadings and/or Motion for Summary Judgment filed with this Court December 29, 1975; and having received and considered Plaintiff United States of America's Motion for Partial Summary Judgment filed with this Court on February 11, 1976; and this Court having received and considered all other memoranda submitted by the parties, finds that there are no genuine issues of fact and that this matter is ready for summary judgment.

The facts are not in dispute and are as follows: On March 20, 1975, plaintiff filed its Complaint in Condemnation and Declaration of Taking in the above captioned case, and thereupon full fee simple title to the 129.4 acres described in the Complaint in Condemnation, subject to certain road easements, vested in the United States. Of the 129.4 acres thus acquired by the plaintiff, approximately 77.4 acres lie within the Yuma Mesa Irrigation and Drainage District.

The District is a political subdivision of the State of Arizona, i. e., a municipal corporation situated south and east of the City of Yuma, Arizona. The lands encompassed within the District are part of the Yuma Mesa Division of the Gila Project as constructed pursuant to the Gila Project Act, 43 Stat. 702 (December 5, 1924) and the Gila Projects Reauthorization Act, 61 Stat. 628 (July 30, 1947).

Pursuant to these acts, diversionary works were constructed at Imperial Dam for the diversion of the Colorado River waters to lands within the Gila Project. The Gila Project consists of the north and south Gila Irrigation Districts and the Wellton Mohawk Irrigation District as well as the Yuma Mesa Irrigation and Drainage District.

On May 26, 1956, the District entered into a contract with the Secretary of the Interior to repay capital costs and operation and maintenance expenses of all facilities involved in the delivery of water, and with specific reference to the Yuma Mesa, a pumping plant and completely lined lateral system was constructed to serve 19,960 acres. The canal and lateral system was designed by the Bureau of Reclamation with the specific capacities necessary to serve a particular acreage, and by reason of such design the defendant cannot increase acreage being serviced without reconstructing the canal system. With specific reference to the 77.4 acres within the District, the District cannot, without additional costs and expense, add acreage to take its place.

The 77.4 acres involved herein have, since the inception of the above mentioned contract, paid its pro rata share of construction and operation and maintenance costs. The parties further agree that in the absence of an award by the Court, the ongoing operation and maintenance costs attributable to this acreage will be shifted to the remaining acreage within the District, i. e., to the remaining landowners in the District.

The parties further agree that contractual and Arizona statutory liens attach to the land within the district whenever a landowner fails to pay the required assessments imposed by the District for costs directly relating to the water delivery herein discussed.

Thus, the issue as framed by the parties is whether the loss of the assessment base by the District constitutes a compensable interest. Plaintiff contends that it is not because of the general rule that a taxing authority does not have a compensable interest in real property based upon its right to levy future taxes. See 2 Nichols, On Emminent Domain, P. 5–223, Sec. 5.744 (3rd 1975). The rationale for this rule is set forth in *Adaman Mutual Water Co. v. United States*, 278 F.2d 842 at 849 (9th Cir. 1960), where the Court stated:

"When the right to assess cannot be distinguished from the taxing power, the interest lost is clearly non-compensable. To allow compensation would be to subject the United States to the taxing power of the several states, a result offensive to the Constitution since *M'Culloch v. State of Maryland*, 1819, 4 Wheat. 316, 17 U.S. 316, 4 L.Ed. 579."

Defendant District relies heavily upon *Adaman* in support of its contention that the diminution of the assessable base by the plaintiff's condemnation constitutes a compensable interest. Therefore, a brief factual background of the *Adaman* case is in order. In that case Adaman, a nonprofit water company, provided water services to the land in a reclamation project. Underground water had to be pumped and distributed to the arid land in the project, and Adaman incorporated and issued stock to the owners of the land within the project. Each share of stock entitled its holder to a pro rata share of water, and both the stock and the water rights were held to be appurtenant to the land upon which the water was to be used. The stock and the land to which it was appurtenant were subject to pro rata assessments to be made from time to time by the Adaman Water Company to pay for the capital investment in the irrigation facilities and for the operation and maintenance of the irrigation system. The assessments, once made, became a lien on the land.

In *Adaman*, the United States condemned a portion of the land within the project and Adaman claimed a compensable interest by the diminution of its assessment base. The Ninth Circuit Court of Appeals framed the issue as:

"The only question presently raised is whether or not [Adaman] is entitled to be compensated for the loss of a portion of Project land since the remaining area will be subject to increased assessments in the future to pay for the maintenance, replacement and operation of the communal irrigation system, the cost of which has not been appreciably lessened by the condemnation." 278 F.2d at 844.

The Court proceeded to hold:

"We think that the duty to pay assessments in the instant case is an equitable servitude or restrictive covenant binding upon . . . [the] Project land serviced by [Adaman]. [Adaman] has lost the benefit derived from this servitude, and the loss is compensable, for the Government has destroyed an intangible right directly connected with the physical substance of the land condemned." 278 F.2d at 846.

The Ninth Circuit Court of Appeals in discussing to whom the compensable interest should be awarded held:

"The benefit derived from this servitude, in the form of lower irrigation costs, adheres to every acre of land within the Project to which stock is appurtenant. The benefit is encompassed by the water rights appurtenant to each parcel and runs with the land to the same extent as does the burden to pay assessments. Appellant [Adaman] must be viewed as claiming the loss of this benefit as the representative of its shareholders, not in their role as shareholders but as landowners in the Project." *Adaman*, 278 F.2d at 847.

The facts of the present case are very much like those in *Adaman*. The landowners are liable on a pro rata basis for the costs of construction and upkeep of the water delivery system. The taking of the land in question lessens the assessable base so that the remaining landowners will have to be assessed higher costs to make up for the resulting deficit in the assessable base caused by the condemnation of the 77.4 acres of land within the District. The landowners in the District are liable by contract and by statute for their pro rata share of the required costs to pay for and maintain the District.

The United States has attempted to distinguish *Adaman* from the present case by stating that in *Adaman*, stock certificates were issued. This, however, appears to be a distinction without a significant difference. Moreover, *Adaman*, 278 F.2d at 847 (see above quotation) held that the Adaman Water Company would claim the loss of the benefit of having a broader assessable base as the representative "of its shareholders, *not in their role as shareholders, but as landowners in the Project.*" (Emphasis supplied). Therefore, the fact that stock certificates were issued is not relevant to our inquiry in this case. The benefits and the obligations appurtenant to the land here are as clear as those in *Adaman* where the Court held that an equitable servitude was created and that such an equitable servitude was a compensable interest.

The United States next attempts to distinguish *Adaman* by stating that in that case the entity claiming the compensable interest was a private company, whereas in this case a municipal corporation is involved. The language of *Adaman* does provide some support for this argument. The court in *Adaman* at 278 F.2d at 849, stated:

"In the instant case the right to assess does not lie with any governmental authority endowed by legislation with the power to tax. Accordingly, the award of compensation here would in no way impinge upon the basic principles of federalism at play in the cases cited above."

There are, however, at least two arguments to counter this dicta in *Adaman*. First, the benefits to be paid by the taking body, i. e., the United States, go to the landowners in the way of their not having to pay increased assessments because of the Government's taking of other land in the

District. Thus, the money does not ultimately go to the entity with the taxing power. The District merely holds the money as the trustee for the remaining landowners. See *Adaman, supra*, 278 F.2d at 847, and *The People of the State of California v. 25.09 Acres of Lands*, 329 F.Supp. 230 at 239 (S.D.Cal.1971). Secondly, the Ninth Circuit Court of Appeals in *Columbia Irrigation District v. United States*, 268 F.2d 128 at 132 (9th Cir. 1959) held:

"If the right to a canal and an easement for a right of way therefor, together with the right to deliver water to a parcel of land, existed in a private corporation and the government condemned that property right, just compensation would necessarily be paid therefor. The mere fact that this property right is lodged in a public body should make no difference. It is nonsensical to confuse this property right, if it exist, with the power of taxation or the governmental power to levy assessments to pay for local improvement."

In *The People of the State of California v. 25.09 Acres of Lands, supra*, 329 F.Supp. at 239, the court stated:

"As Judge Fee suggested in Columbia Irrigation District, there is no reason that recovery should be denied simply because the same right is lodged in a public body, unless of course the power to assess cannot be separated from the power to tax."

There is no claim by the United States that the assessment power of the District cannot be separated from the District's taxing power. Indeed, such a claim could not, in good faith, be asserted.

It should further be noted that in Annot., 90 A.L.R. 1137, 1138 (1934), there is an attempted distinction between special assessments and taxes. That annotation reads, in pertinent part:

"In a broad sense, special assessments are taxes, and the right to impose assessments has its foundation in the taxing power of the government, and yet in practice, and as generally understood, there is a broad distinction between the two terms. Taxes, as the term is generally used, are public burdens imposed generally on the inhabitants of the whole state, or some civil division thereof, for governmental purposes, without reference to peculiar benefits to particular individuals or property. Assessments have reference to impositions for improvements which are specially beneficial to particular individuals or property and which are proposed in proportion to the particular benefits supposed to be conferred. They are justified only because the improvements confer special benefits, and are just only when they are divided in proportion to such benefits."

The cases of *United States v. Aho*, 68 F.Supp. 358 (D.C.Or.1945), and *United States v. Florea*, 68 F.Supp. 367 (D.C.Or. 1945), relied upon this kind of distinction and found a compensable interest where a similar interest to the claimed compensable interest here was involved. See also *Columbia Irrigation District v. United States, supra*.

The court in *United States v. Aho, supra*, 68 F.Supp. at 361, also noted that in special districts as the one herein involved, acknowledged that:

"The fiscal experience of such entities shows that the plans for payment of the indebtedness of such entities shows that the plans for payment of the indebtedness and upkeep is so closely figured that when a very small proportion of the included lands no longer pays the assessment, the project becomes unfeasible. The pressure for the passage of the municipal bankruptcy act was caused largely by the failure of such districts once a small proportion of the lands could no longer be profitably cultivated in the depression era."

This Court is aware of the case of *United States v. Howell*, 251 F.Supp. 787 (D.Or. 1965), however, that case does not dissuade the Court from the view that the District here is properly claiming a compensable interest. In that case, the court in distinguishing *United States v. Aho, supra*, and *United States v. Florea, supra*, from the facts in *Howell* relied upon a distinction between an irrigation district and a drain-

age district. See *Howell*, 251 F.Supp. at 787, fn.1. Such a distinction is not appropriate here since the District in this case is both an irrigation and a drainage District. Further, this Court is of the opinion that *Howell* interpreted the *Columbia Irrigation District v. United States* case too narrowly.

Therefore, this court finds that the case of *Adaman Mutual Water Co. v. United States, supra*, supports the view that the interest herein involved is a compensable interest, i. e., a diminution of an entity's assessment base caused by condemnation of property by the Government where the remaining landowners, were they not compensated therefor, would be bound to pay increased assessments to pay for the cost, maintenance, and operation of the irrigation system, and where the obligations and benefits flowing from the operation of the District are appurtenant to the land within the District.

This Court further finds that the case of *Columbia Irrigation District v. United States*, 268 F.2d 128 (9th Cir. 1959), supports the view that if there exists a valid compensable interest, the fact that a governmental entity is the owner of that interest does not serve to invalidate that interest. See also *People of State of California v. 25.09 Acres of Lands*, 329 F.Supp. 230 (S.D.Cal.1971).

Therefore, defendant's motion for summary judgment is granted and plaintiff's motion for partial summary judgment is denied. Defendant shall prepare a form of judgment consistent with this order and submit said form of judgment to this Court within twenty days after the issuance of this opinion and order.