No. 2--00--0934

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

BYRON DRAGWAY, INC.,           ) Appeal from the Circuit Court

) of Ogle County.

Plaintiff-Appellant, )

) No. 98--CH--0024

v. )

)

THE COUNTY OF OGLE, ) Honorable

) Richard E. DeMoss,

Defendant-Appellee. ) Judge, Presiding.

________________________________________________________________

JUSTICE CALLUM delivered the opinion of the court:

Plaintiff, Byron Dragway, Inc., sought a declaratory judgment against defendant, the County of Ogle.  Plaintiff asserted that an ordinance amendment reducing the days and hours that plaintiff's raceway could be open for business resulted in a taking of its property without compensation.  The trial court granted defendant's motion to dismiss pursuant to section 2--619(a)(9) of the Code of Civil Procedure (the Code) (735 ILCS 5/2--619(a)(9) (West 1998)).  We reverse and remand.

The complaint contains the following relevant allegations. Since 1964, plaintiff and its predecessors in interest have operated the only commercial racing dragstrip in Ogle County.  Plaintiff obtained from defendant annual licenses and permits to conduct its business.  These licenses were subject to certain operating requirements in the Ogle County Code.  Section 4--1D--4 of the Ogle County Code governed the operating hours for all business.  Ogle County Code §4--1D--4(B) (1982).  That section established the permissible operating hours for three categories of businesses: outdoor movie theaters, vehicle racing businesses, and all other businesses.

Before November 18, 1997, section 4--1D--4 provided that vehicle racing businesses could (1) open at 3 p.m. Friday and close at 12:15 a.m. Saturday; (2) open at 8 a.m. Saturday and close at 12:15 a.m. Sunday; (3) be open from 8 a.m. to 6 p.m. on Sunday; and (4) be open from 8 a.m. to 9 p.m. on Memorial Day and Labor Day.  See Ogle County Code §4--1D--4(B) (1982).  Plaintiff alleged that, relying on the ordinance, it spent hundreds of thousands of dollars to construct and improve the raceway to attract competitors and spectators to annual events between April and October.

On November 18, 1997, defendant amended the ordinance to reduce the permitted operating hours for vehicle racing businesses.  The amendment eliminated racing on Fridays and established operating hours of 8:30 a.m. to 6 p.m. on Saturdays, Sundays, Memorial Day, and Labor Day.  See Ogle County Code §4--1D--4(B) (amended November 18, 1997).  In 1998, plaintiff obtained a license to conduct its racing business.

Plaintiff further alleged that it competes with dragstrip racing businesses in Moline and Joliet, Illinois; Union Grove, Wisconsin; Morocco, Indiana; and Dubuque, Iowa.  The economic viability of its business depends on conducting racing on Fridays and during the evenings on Saturdays, Sundays, Memorial Day, and Labor Day.  Such hours are essential to attract sufficient regional and national competitors and spectators to provide the minimum income necessary to continue the business.  If the amendment is enforced, races will have to be canceled or significantly restricted, substantially reducing plaintiff's income and permanently damaging its national reputation as a viable  dragstrip raceway.  Also, plaintiff alleged on information and belief that no similar business in the United States has maintained its economic viability without holding races on Fridays or during the evenings on Saturdays, Sundays, and holidays.  Plaintiff sought a declaration that enforcing the amendment to section 4--1D--4 would result in a taking of its property without just compensation in violation of federal and state constitutional law.

Defendant moved to dismiss the complaint pursuant to section 2--619(a)(9) of the Code.  It argued that (1) because section 4--1D--4(B) was a permissible nuisance abatement measure, its enforcement could not result in a "taking"; (2) 
res judicata
 barred the action because plaintiff could have raised its constitutional claim in an earlier action in which defendant alleged that in 1996 plaintiff violated section 4--1D--4(B)
; (3) because section 4--1D--4(B) was not a zoning ordinance but instead a part of a licensing scheme, the takings clause did not apply; and (4) section 4--1D--4(B) was rationally related to the legitimate goal of noise reduction.

The trial court rejected defendant's first and second arguments.  The court agreed with defendant, however, that section 4--1D--4(B) was a part of a legitimate licensing scheme and was rationally related to defendant's legitimate interest in regulating the hours of a business that creates substantial noise and traffic.  Accordingly, the trial court granted defendant's motion.  Plaintiff timely appealed.

Defendant's motion was based primarily on section 2--619(a)(9), which provides for an involuntary dismissal on the ground that the claim is barred by other affirmative matter avoiding the legal effect of or defeating the claim.  735 ILCS 5/2--619(a)(9) (West 1998).  A section 2--619(a)(9) motion admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter that avoids or defeats the claim.  
Zimmerman v. Fasco Mills Co.
, 302 Ill. App. 3d 308, 311 (1998).  In ruling on a section 2--619(a)(9) motion, the trial court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party.  
In re Chicago Flood Litigation
, 176 Ill. 2d 179, 189 (1997).  We review 
de novo
 the trial court's ruling and consider whether a genuine issue of material fact precludes the dismissal and, if not, whether the dismissal is proper as a matter of law.  
Bainter v. Village of Algonquin
, 285 Ill. App. 3d 745, 750 (1996).

Although plaintiff alleged violations of both state and federal constitutional law, both here and below, plaintiff and defendant limited their arguments and supporting authority to considerations of federal constitutional law.  Therefore, we focus only on that aspect of plaintiff's claim.

On appeal, defendant argues that the first and third contentions it raised in its motion support the trial court's ruling.  Defendant's first contention was that, because section 4--1D--4(B) was a permissible nuisance abatement measure, its enforcement could not result in a taking of plaintiff's property. 

The fifth amendment to the United States Constitution provides in relevant part that "private property [shall not] be taken for public use, without just compensation."  U.S. Const., amend. V.  Plaintiff asserts an inverse condemnation claim.  As distinguished from eminent domain, inverse condemnation describes the manner in which a landowner recovers compensation for a taking of its property when condemnation proceedings have not been instituted.  
Tim Thompson, Inc. v. Village of Hinsdale
, 247 Ill. App. 3d 863, 884 (1993).  A land use regulation does not result in a taking if it substantially advances legitimate governmental interests and does not deny an owner an economically viable use of its land.  
Nollan v. California Coastal Comm'n
, 483 U.S. 825, 834, 97 L. Ed. 2d 677, 687, 107 S. Ct. 3141, 3147 (1987).  Although property may be regulated to a certain extent, if the regulation " 'goes too far,' " it will be recognized as a taking.  
Lucas v. South Carolina Coastal Council
, 505 U.S. 1003, 1014, 120 L. Ed. 2d 798, 812, 112 S. Ct. 2886, 2893 (1992), quoting 
Pennsylvania Coal Co. v. Mahon
, 260 U.S. 393, 415, 67 L. Ed. 322, 326, 43 S. Ct. 158, 160 (1922).  No set formula determines when a regulation goes too far.  
Lucas
, 505 U.S. at 1015, 120 L. Ed. 2d at 812, 112 S. Ct. at 2893.

Lucas
 identified two categories of regulatory action as compensable without a case-specific inquiry into the public interest advanced to support the restraint.  The first category includes regulations that compel the landowner to suffer a physical invasion of his property.  
Lucas
, 505 U.S. at 1015, 120 L. Ed. 2d at 812, 112 S. Ct. at 2893.  The second category includes regulations that deny all economically beneficial or productive use of land.  
Lucas
, 505 U.S. at 1015, 120 L. Ed. 2d at 813, 112 S. Ct. at 2893.  The complaint here asserts that defendant's regulation falls within the latter category.  Also, this court has interpreted 
Lucas
 as leaving open the possibility that a landowner could state a regulatory takings claim based upon a deprivation of beneficial economic use that is less than 100%.  
Tim Thompson, Inc.
, 247 Ill. App. 3d at 886-87.

Defendant's contention is based on the "nuisance exception" discussed in 
Lucas
.  The Court stated that, where "the State seeks to sustain regulation that deprives land of all economically beneficial use, we think it may resist compensation only if the logically antecedent inquiry into the nature of the owner's estate shows that the proscribed use interests were not part of his title to begin with."  
Lucas
, 505 U.S. at 1027, 120 L. Ed. 2d at 820, 112 S. Ct. at 2899.  To fall within this exception, a regulation that prohibits all economically beneficial use of land cannot be newly legislated but must inhere in the title itself.  Thus, the law must "do no more than duplicate the result that could have been achieved in the courts--by adjacent landowners (or other uniquely affected persons) under the State's law of private nuisance, or by the State under its complementary power to abate nuisances that affect the public generally, or otherwise."  
Lucas
, 505 U.S. at 1029, 120 L. Ed. 2d at 821, 112 S. Ct. at 2900.  The  inquiry ordinarily will entail reliance on the factors typically associated with nuisance law, including the degree of harm to public lands or adjacent private property, the social value of the activity, and the ease with which the harm can be avoided.  
Lucas
, 505 U.S. at 1030-31, 120 L. Ed. 2d at 822, 112 S. Ct. at 2901.

Defendant's motion did not address any of the nuisance-related factors discussed in 
Lucas
.  Instead, it relied solely on the general proposition that the ordinance "is aimed at preventing a nuisance, in part, the noise and traffic which accompanies a vehicle racing business."
  Defendant introduced nothing addressing the factual elements of this issue.  For example, the trial court had nothing before it regarding the nature of plaintiff's property and the surrounding properties.  If there is nothing within miles of plaintiff's property, then the nuisance abatement justification may not exist.

Also significant is the statement in 
Lucas
 that "[t]he fact that a particular use has long been engaged in by similarly situated owners ordinarily imports a lack of any common-law prohibition (though changed circumstances or new knowledge may make what was previously permissible no longer so [citation])."  
Lucas
, 505 U.S. at 1031, 120 L. Ed. 2d at 822, 112 S. Ct. at 2901.  Plaintiff alleged that, for many years, it operated its raceway under the more liberal ordinance in existence before the amendment.  This was essentially the basis for the trial court's rejection of the nuisance exception.  The record does not reveal the impetus for the amendment.  Therefore, it is impossible to determine whether "changed circumstances or new knowledge" existed.  We do not imply that defendant's nuisance-based argument cannot succeed.  We merely conclude that, at this stage of the proceedings, there are genuine issues of material fact as to whether the amendment to the ordinance is justified as a nuisance abatement measure.  We cannot say as a matter of law that defendant's contention requires the dismissal of plaintiff's complaint.  

Next, defendant contends that the trial court correctly concluded that the ordinance is constitutional as a part of a legitimate business licensing scheme.  Defendant and the trial court relied on 
David E. Shelton Productions, Inc. v. City of Chicago
, 167 Ill. App. 3d 54 (1988).  However, that decision is inapplicable.

The plaintiff in 
Shelton
 held a license to operate a juice bar.  The defendant city amended the licensing scheme to limit the hours a juice bar could be open.  The plaintiff did not challenge the ordinance as taking its property without compensation.  Instead, it argued that the ordinance was an unconstitutional zoning restriction of purported nuisances because the ordinance did not have a substantial relationship to the public health, safety, morals, or general welfare. 

The court held that the ordinance was a part of a licensing scheme because it regulated establishments based on the type of business they conduct irrespective of their location.  As such, the law pertaining to nuisances did not apply.  
The court applied the constitutional standard governing the validity of licensing regulations: whether the regulation has a rational relationship to a legitimate governmental interest.

Because the plaintiff in 
Shelton
 did not raise a takings claim, that decision did not purport to exempt from the takings clause any law that was a part of a business licensing scheme. Indeed, in 
Blue Cat Lounge, Inc. v. License Appeal Comm'n
, 281 Ill. App. 3d 643, 647 (1996), the same court applied a takings analysis to the revocation of a liquor license and did not cite 
Shelton
.  Thus, in 
Shelton
, the court merely concluded that the constitutional standard governing licensing regulations controlled over the standard governing zoning ordinances.

The issue here, whether the ordinance results in a taking, is entirely different.  See 
American National Bank & Trust Co. v. City of Chicago
, 826 F.2d 1547, 1549 (7th
 Cir. 1987) (recognizing in 
dicta
 that a system of licensing businesses could effect a taking).  Although a part of a business licensing scheme, the ordinance has the practical effect of limiting plaintiff's use of its property.  Therefore, 
Shelton
 does not require the dismissal of plaintiff's takings claim, and the trial court erred in relying on that decision.

In sum, section 2--619 "allow[s] for a threshold disposition of questions of law and easily proved issues of fact."  
Mio v. Alberto-Culver Co.
, 306 Ill. App. 3d 822, 824 (1999).  In its motion, however, defendant did nothing more than deny plaintiff's essential allegations, thereby raising complex factual issues that required a trial to resolve.  See 
Johnson v. Du Page Airport Authority
, 268 Ill. App. 3d 409, 414 (1994) (section 2--619 motion cannot merely deny essential allegations of plaintiff's case).  As a result, the court should not have granted the motion. 

For these reasons, we reverse the judgment of the circuit court of Ogle County and remand the cause.

Reversed and remanded.

McLAREN and GEIGER, JJ., concur.