FIFTH DIVISION

No. 1-07-0108

| | | |
|---|---|---|
| THE CITY OF CHICAGO, a Municipal Corporation, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 06 L 50329 |
| PROLOGIS, a Maryland Real Estate Investment Trust, f/k/a ProLogis Trust, f/k/a Security Capital Industrial Trust, | ) ) ) ) | Honorable Sheldon Gardner, Judge Presiding. |
| Defendant-Appellant | ) ) | |
| (Dennis J. Hiffman; John F. Cash; Sylvia Doyne Collins Irrevocable Trust dated dated 4/10/96; Keith Bank Declaration of Trust dated 12/14/94; Edward R. Hulina Trust dated 5/10/94; JKS-3D Two Trust; Mark D. Christensen; Holly D. Hulina Trust dated 5/10/94; Elizabeth E. Hulina Trust dated 5/10/94; Bonnie E. Hulina Trust dated 5/10/94; and Richard E. Hulina Trust dated 5/10/94, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Intervenors-Appellants; | ) ) | |
| ProLogis-Macquarie Illinois-Ohio, LLC, a Delaware Limited Liability Company; ProLogis O'Hare, LLC, a Delaware Limited Liability Company; Crane and Norcross; Prudential Insurance Company of America; American National Bank & Trust Company of Chicago; ProLogis Management, Inc., a Delaware Corporation; Concordia International Forwarding Corporation; JAL Trans, Inc.; Purolator USA, Inc., an Illinois Corporation; Morrison Express Corporation, | ) ) ) ) ) ) ) ) ) ) ) ) | |

| a California Corporation; Kuehne & Nagel, | ) |
| Inc., a California Corporation; Exel | ) |
| Global Logistics, Inc., a New York | ) |
| Corporation; Aeroground, Inc., a | ) |
| California Corporation; Hellmann | ) |
| Worldwide Logistics, Inc., a Delaware | ) |
| Corporation; Catamount Holdings, LLC, | ) |
| an Illinois Limited Liability Company; Hassett | ) |
| Storage Warehouse, Inc., an Illinois | ) |
| Corporation; Nippon Express, USA, Inc., an | ) |
| Illinois Corporation; Maria Pappas, Cook | ) |
| County Treasurer; David Orr, Cook County | ) |
| Clerk; John L. Novak, Treasurer and County | ) |
| Collector of DuPage County; Gary A. King, | ) |
| County Clerk of DuPage County; and Unknown | ) |
| Owners, | ) |
| | ) |
| Defendants.) | ) |

PRESIDING JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Although complexities relating to the expansion of O'Hare Airport figure in the background of this case, this appeal presents a single issue: whether compensation must be paid to holders of certain bonds. Defendant ProLogis, a Maryland real estate investment trust, f/k/a ProLogis Trust, f/k/a Security Capital Industrial Trust (defendant or ProLogis), owned property that included a redevelopment project area for which tax increment financing (TIF) bonds had been sold. After the plaintiff City of Chicago (plaintiff or the City) brought an eminent domain action against ProLogis to acquire the property for the planned airport expansion, bondholders Dennis Hiffman, John Cash, Sylvia Doyne Collins Irrevocable Trust dated 4/10/96, Keith Bank Declaration of Trust dated 12/14/94, Edward R. Hulina Trust dated 5/10/94, JKS-3D Two Trust, Mark Christensen, Holly D. Hulina Trust dated 5/10/94, Elizabeth E. Hulina Trust dated 5/10/94, Bonnie E. Hulina Trust dated 5/10/94, and Richard E. Hulina Trust dated 5/10/94 (collectively,

-2-

intervenors or bondholders), intervened. ProLogis and the bondholders filed a counterclaim for inverse condemnation, which the circuit court denied. On appeal, they contend that the City was required to pay just compensation for rendering the TIF bonds worthless. We disagree and, for the reasons that follow, we affirm the ruling of the circuit court.

The factual background concerning the creation of the redevelopment project in the Village of Bensenville (the Village or Bensenville) and the TIF bonds is not disputed. According to the record, the Village prepared a redevelopment plan for certain property adjacent to O'Hare Airport (referred to as the O'Hare Cargo Center Redevelopment Project Area) for the purpose of furthering the Village's growth and increasing the assessed valuation of village real estate. The Village prepared the plan, entered an agreement with a developer and enacted ordinances and resolutions ratifying the plan and agreement.

In 1996, the Village entered a redevelopment agreement with a developer, Hiffman Shaffer Acquisitions, Inc., which then made an assignment of its rights and obligations to purchase the redevelopment property as well as the entire redevelopment agreement to defendant ProLogis. Under the agreement, the developer was to acquire the property and have certain buildings constructed in order to generate additional tax revenue for the Village; of an entire project cost of more than $52 million, slightly less than $9 million was made eligible for tax increment financing.

In April 1996, the TIF bonds were issued to facilitate the development of the project and were meant to be the source of funding for the TIF costs; the redevelopment agreement made note of the "extremely limited" number of potential buyers that existed at the stage before tenants

had committed to the project. ProLogis agreed to purchase the TIF bonds and the Village agreed to issue $2.8 million in TIF bonds to ProLogis and $4.2 million in TIF bonds to either ProLogis or its nominees.

The $7 million in TIF bonds were issued pursuant to a village ordinance (bond ordinance) that authorized their issuance and which explicitly created a contract between the Village and the registered bondholders. In the bond ordinance, the Village pledged to pay the bond principal plus 10% annual tax-exempt interest for a 20-year term. The bond ordinance stated, in detailing the security of the bonds, that the principal and interest payments were to be made exclusively from certain property taxes, the "pledged taxes," which were also known as the incremental or *ad valorem* taxes:

> "The Bonds, together with the interest *** if any, thereon, are
> limited obligations of the Village, payable solely and only from the
> Pledged Taxes. *** No holder of any Bond shall have the right to
> compel the exercise of any taxing power of the Village for payment
> of principal thereof or interest *** if any, thereon. THE BONDS
> DO NOT CONSTITUTE AN INDEBTEDNESS OF THE
> VILLAGE OR A LOAN OF CREDIT THEREOF WITHIN THE
> MEANING OF ANY STATUTORY OR CONSTITUTIONAL
> PROVISION."

The TIF bonds, which indicated a similar source of payment, *ad valorem* taxes and amounts pledged and deposited to the O'Hare Cargo Center Redevelopment Project Area Special

Tax Incremental Allocation Fund, were considered investments subject to known risk. The bondholders signed certificates of purchase that explicitly indicated their awareness of the risks associated with these investment bonds and an understanding of the respective security arrangement. Specifically, the bondholders warranted that they independently investigated "the circumstances surrounding the issuance of the Bonds *and the security and sources of payment therefor*." (Emphasis added.) The certificates enumerated the various documents at the purchasers' disposal and contained acknowledgment that the purchasers could request, and had received, "information relating to the Bonds, the Village and the Project that the Purchaser deems necessary to make an independent determination to purchase the Bonds." The bondholders also stated in the certificates that they had "assumed responsibility for obtaining such information and making such review." Additionally, they characterized themselves as sophisticated investors able to handle, analyze, and evaluate risks, economic and otherwise, associated with the investment of these bonds: "The purchaser is a sophisticated investor, can bear the economic risk of the purchase of the Bonds, and has such knowledge and experience in business and financial matters, including the analysis of a participation in the purchase of similar investments, as to be capable of evaluating the merits and risks of an investment in the Bonds." The terms of each bond are identical and explicitly state that the bonds are "limited obligations" of the Village and that they are secured only by the incremental taxes, "if any." The bonds state, as does the ordinance, that the holders do not have "the right to compel the exercise of any taxing power of the village for payment of principal *** or interest."

Over five years, ending in 2001, construction on the buildings in the redevelopment

project was completed. ProLogis held the title to the property and leased the buildings to commercial tenants. In about 2002, the City identified the property as necessary for the expansion of O'Hare.

In April 2006, the City filed a condemnation action against ProLogis and all others with interests in the property to acquire the property comprising the O'Hare Distribution Complex, referred to as the subject property. However, the City did not seek to acquire the bonds attached to the subject property.

The following month, the bondholders filed the petition to intervene in the action and, with ProLogis, they filed the counterclaim for inverse condemnation. The bondholders and ProLogis are owners of the TIF bonds issued by the Village and secured by the incremental real estate taxes of the subject property. In the counterclaim, ProLogis and the bondholders sought just compensation for the bonds because, they claimed, the City's acquisition of the subject property would cause the redevelopment property to become exempt from real estate taxes, meaning the Village would not be able to collect incremental taxes for payment of future interest and remaining principal, thereby reducing the value of the bonds to nothing.

On August 14, 2006, the court entered an agreed final judgment order in which details of the payment for the land taken was directed. In the order, the court found that the City had the authority to exercise its right of eminent domain, the subject property was subject to that right, and the City's right to exercise eminent domain was not being exercised improperly. The final just compensation for the subject property was determined in the total amount of $94, 500,000; the compensation award was to be paid for the fee simple title to the property, constituting the

full and final compensation and satisfaction of all claims by the defendants, but which did not include "any compensation (if any is owed)" for the intervenors' bonds. The order stated that "the Parties further agree that the entry of this Agreed Final Judgment Order does not waive, prevent, diminish or affect Defendant-Owner's right to claim or Plaintiff's right to challenge whether Plaintiff's acquisition of the Subject Property constitutes a taking of the portion of the Bonds owned by Defendant-Owner requiring payment of additional just compensation." It further stated that, although the parties agreed not to appeal the order, neither the intervenors nor the City was "waiving any right to appeal from any order regarding the Bonds."

Ultimately, the court denied the bondholders' inverse condemnation counterclaim. In a written memorandum decision and judgment order issued on December 19, 2006, the court concluded that the City took the subject property, not the TIF bonds, and that the total elimination of the bonds' value was a risk assumed by the intervenors. On that basis, the court concluded that intervenors held valueless bonds and would not receive just compensation from the City because their loss was a consequential one, which had resulted from a lawful taking.

On appeal, ProLogis and the bondholders contend the circuit court improperly denied their inverse condemnation claim because their right to receive incremental real estate taxes from the subject property constitutes a protected property interest requiring just compensation. The City challenges the assertion of a compensable property interest, contending instead that the bondholders do not have a legitimate expectation of guaranteed repayment and their asserted right to receive an income stream is not an encumbrance on the redevelopment property. We agree with the City.

1-07-0108

The question involved presents a question of law, thus it is reviewed *de novo*.

Department of Transportation v. Lowderman, LLC, 367 Ill. App. 3d 502, 504, 854 N.E.2d 261 (2006); Southwestern Illinois Development Authority v. Al-Muhajirum, 318 Ill. App. 3d 1005, 1008, 744 N.E.2d 308 (2001).

The takings clause of the fifth amendment to the United States Constitution, made applicable to the State of Illinois through the fourteenth amendment, and the Illinois Constitution, require just compensation for private property taken by the exercise of eminent domain. U.S. Const., amend. V; Ill. Const. 1970, art. I, §15; Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 536-37, 161 L. Ed. 2d 876, 886-87, 125 S. Ct. 2074, 2080 (2005); see also Canel v. Topinka, 212 Ill. 2d 311, 331-32, 818 N.E.2d 311 (2004); Lamar Whiteco Outdoor Corp. v. City of West Chicago, 355 Ill. App. 3d 352, 359, 823 N.E.2d 610 (2005). Illinois also requires that just compensation be made for damaged private property. 735 ILCS Ann. 5/7-101 (Smith-Hurd 2003);[1] Lamar Whiteco Outdoor Corp., 355 Ill. App. 3d at 359; see also St. Lucas Ass'n v. City

---

[1] The citation given is to the version of the Eminent Domain Act that was in effect at the time this action was litigated. Since then, the entire Act has been repealed (Pub. Act 94-1055, eff. January 1, 2007). The Act was reenacted and recodified (see 735 ILCS Ann. 30/1-1-1 *et seq.* (Smith-Hurd 2007)), but the provisions pertinent here remain unchanged. An exception exists in the revised version of the statute which provides that a "condemning authority may exercise the power of eminent domain for the acquisition or damaging of property under the O'Hare Modernization Act as provided for by law in effect prior to the effective date of this Act." 735 ILCS Ann. 30/5-5-5(a-5) (Smith-Hurd Supp. 2007).

-8-

of Chicago, 212 Ill. App. 3d 817, 833-34, 571 N.E.2d 865 (1991). Condemnation proceedings to acquire property may properly be instituted by a municipality where just compensation is paid for the property. See 735 ILCS Ann. 5/7-101 (Smith-Hurd 2003), repealed by Pub. Act 94-1055, eff. January 1, 2007; 735 ILCS Ann. 30/10-5-5(a) (Smith-Hurd Supp. 2007); see also Lingle, 544 U.S. at 537, 161 L. Ed. 2d at 886-87, 125 S.Ct. at 2080; Lamar Whiteco Outdoor Corp., 355 Ill. App. 3d at 367.

In addition to taking by direct physical invasion of private property by the government, takings may also result from the impact of governmental regulation. See Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1014, 120 L. Ed. 2d 798, 812, 112 S. Ct. 2886, 2893 (1992); Byron Dragway, Inc. v. County of Ogle, 326 Ill. App. 3d 70, 73, 759 N.E.2d 595 (2001). Illinois courts have held that compensable property includes personal, tangible or intangible property, as well as real property. Illinois Cities Water Co. v. City of Mt. Vernon, 11 Ill. 2d 547, 550-51, 144 N.E.2d 729, 731 (1957); but see Citizens Utilities Company of Illinois v. Metropolitan Sanitary District of Greater Chicago, 25 Ill. App. 3d 252, 259, 322 N.E.2d 857 (1974) (loss of business profits and consequential deterioration in property value are not elements of damage). Inverse condemnation is a means by which a property owner may recover just compensation for private property that was taken or damaged without a condemnation action having been instituted. Byron Dragway, Inc., 326 Ill. App. 3d at 73. However, when the damage or loss in value is the consequence of a lawful taking, courts have held no compensation is mandated.

In Omnia Commercial Co. v. United States, 261 U.S. 502, 67 L. Ed. 773, 43 S. Ct. 437 (1923), the plaintiff company had acquired by contract the right to purchase a large quantity of

steel plate from a steel company at a price under market; had the contract been carried out, it would have produced large profits for the plaintiff. However, before any deliveries on the contract had been made, the government requisitioned the steel company's entire production of steel plate for a year and directed the plaintiff company not to comply with the terms of the contract. The plaintiff brought an action alleging that there had been, effectively, a taking of its right of priority to the steel plate and, thus, an appropriation of its property for public use.

Although the contract in question was held to be property within the fifth amendment meaning (Omnia Commercial Co., 261 U.S. at 508, 67 L. Ed. at 775, 43 S. Ct. at 437), the Supreme Court concluded that for consequential loss or injury resulting from a lawful governmental action, the law affords no remedy (Omnia Commercial Co., 261 U.S. at 510, 67 L. Ed. at 776, 43 S. Ct. at 438). The court reiterated that, if a contract or other property was taken for public use, the government would be liable for compensation, but if the property is injured or destroyed by lawful action, without a taking, the government is not liable for the damage. Omnia Commercial Co., 261 U.S. at 510, 67 L. Ed. at 776, 43 S. Ct. at 438. In examining the specific contract at issue, the court stated that the government requisitioned the future product of the steel company, but the contract was so far identified with its fulfillment that the plaintiff appeared to have confused the contract with its subject matter. Omnia Commercial Co., 261 U.S. at 510, 67 L. Ed. at 776, 43 S. Ct. at 438. However, there was no acquisition of the obligation or right to enforce the contract and, as a result of the lawful governmental action of requisition, the performance of the contract was rendered impossible; the contract was not appropriated, but ended. Omnia Commercial Co., 261 U.S. at 510-11, 67 L. Ed. at 776, 43 S. Ct. at 438.

1-07-0108

Therefore, the effect of the requisition was not to keep the contract alive for the use of the government, but to bring it to an end and, accordingly, the loss of the plaintiff company's right to the production of the steel plate was not a taking or appropriation for public use. Omnia Commercial Co., 261 U.S. at 513, 67 L. Ed. at 777, 43 S. Ct. at 439.

The holding in Omnia Commercial Co. was later applied to a situation in which bonds were rendered worthless as a consequence of a lawful taking of real property in John K. & Catherine S. Mullen Benevolent Corp. v. United States, 290 U.S. 89, 78 L. Ed. 192, 54 S. Ct. 38 (1933) (hereinafter Mullen). There, a holder of municipal bonds that had been rendered worthless when the land was acquired by the federal government for construction of a reservoir claimed that the government's liability arose from its acquisition of the underlying real property. Mullen, 290 U.S. at 90, 78 L. Ed. at 193, 54 S. Ct. at 39. The bondholder argued that the bonds were also property that was taken, claiming the acquisition of the land destroyed the value of the securities and gave rise to an implied promise to pay the sums remaining due to the bondholders. Mullen, 290 U.S. at 91-92, 78 L. Ed. at 194, 54 S. Ct. at 39.

In rejecting that argument, the Supreme Court examined the statutory basis for the creation of the bonds. The state statutes provided for creation of improvement districts for construction of the type of public works at issue; a process was set forth including the passage of ordinances, which, among other things, describe the area to be improved, create the district, and provide for taxation and assessment of the cost upon all parcels of land within the district. Mullen, 290 U.S. at 92-93, 78 L. Ed. at 194-95, 54 S. Ct. at 40. Under the statute, the municipality was allowed to provide for payment by installments rather than levying the entire

-11-

assessment at one time and it could issue improvement bonds of the district payable in installments; reassessment on all property in the district was also allowed. Mullen, 290 U.S. at 93, 78 L. Ed. at 195, 54 S. Ct. at 40. The Court determined that, under the statute, the municipality was not liable for the amount of the bonds but was under a duty only to collect the assessments and place them in a separate fund for payment of principal and interest; in fulfilling that obligation, the city could sue to recover from each lot the amount of any assessment against it, or, if it failed to do so, the bondholder could proceed in his own name and foreclose the lien of the assessment because the bonds transferred to the holder all the right and interest of the municipality in such assessment. Mullen, 290 U.S. at 93-94, 78 L. Ed. at 195, 54 S. Ct. at 40. The Court stated that the bondholder is the owner in equity of the assessment fund and as a real party in interest, it could, upon the city's default in collection, enforce the city's right to collect the assessment out of the land. Mullen, 290 U.S. at 94, 78 L. Ed. at 195, 54 S. Ct. at 40. However, the bonds had no general lien upon the lands in the district and, but for the assessment, no special lien on any tract. Mullen, 290 U.S. at 94, 78 L. Ed. at 195, 54 S. Ct. at 40.

The Court rejected the bondholder's insistence that the bonds were, in legal effect, taken (because the sole source of payment was the reassessment upon the lots in the improvement districts, and the government's action rendered such procedure vain, effectually destroying the chose in action) and it held, to the contrary, that there was not a taking of the bonds. Mullen, 290 U.S. at 94, 78 L. Ed. at 195, 54 S. Ct. at 40. Acknowledging that, at the date of acquisition of the property, the real estate was subject to assessment in the future for taxes, including those for reassessments, which could not be levied on property which had passed to the government, the

1-07-0108

Court held that such action did not mean "that the government appropriated the right to assess them *in futuro*, nor that it took the benefit which might accrue to bondholders consequent on such future levies. By purchase of the lands the United States at most frustrated action by the city to replenish the assessment fund." Mullen, 290 U.S. at 94-95, 78 L. Ed. at 195-96, 54 S. Ct. at 40. Also rejecting an argument based upon an implied contract theory as to any unpaid balance on the outstanding bonds, and specifically citing Omnia Commercial Co., the Court applied its earlier holding and held that the government's action was not a taking of the bondholder's property. Mullen, 290 U.S. at 95, 78 L. Ed. at 196, 54 S. Ct. at 40-41.

This court considered a similar question concerning a school district's claim regarding the loss of future real estate tax revenue from a condemnation proceeding by a forest preserve district. Lake County Forest Preserve District v. First National Bank of Waukegan, 213 Ill. App. 3d 309, 313-14, 571 N.E.2d 1115 (1991). The court found the school district's allegations of future harm from the removal of the real property at issue from the tax rolls to be an insufficient interest to give it standing to intervene. Lake County Forest Preserve District, 213 Ill. App. 3d at 314. There, after determining that the school district could not be considered a party to the action, the court emphasized that a nonparty has standing to appeal if it has a direct and substantial interest in the subject matter which would be prejudiced by the judgment or benefitted by its reversal. Lake County Forest Preserve District, 213 Ill. App. 3d at 314. The court found the school district's position analogous to that of individual property taxpayers who did not have standing to file lawsuits in attempts to force the return of exempt parcels of real estate to the tax rolls. Lake County Forest Preserve District, 213 Ill. App. 3d at 314 (citing Schlenz v. Castle, 115

-13-

1-07-0108

Ill. 2d 135, 503 N.E.2d 241 (1986), in which the taxpayers' interest in the taxation of any parcel of exempt property was held to be extremely remote). Likewise, the school district, in essence, had no property interest that was affected by the condemnation because its interest in receiving tax revenue from the subject property was too remote to give it standing to appeal. Lake County Forest Preserve District, 213 Ill. App. 3d at 314.

In the instant case, the circuit court found the City was authorized by statute, the O'Hare Modernization Act, to take the property for the O'Hare expansion plan. See 620 ILCS 65/15 (West 2006). It stated that the City exercised its authority to do so when it instituted the condemnation action in April 2006 to acquire the private real property owned by ProLogis and noted that since the City's complaint omitted the intervenors' bonds as property to be acquired, the inverse condemnation case was initiated. In rejecting the intervenors' arguments, the court found the situation distinguishable from scenarios presented in their authorities because it involves simultaneous condemnation and inverse condemnation actions and a consequential loss that was the result of a lawful governmental taking. The court explicitly stated that it was not addressing whether the bonds at issue were compensable private property because the bonds' complete lack of value was a consequence of a lawful taking rather than a taking separate from that of the subject real property.

Finding the situation here to be essentially the same as that presented in Omnia Commercial Co. and Mullen, the court determined that the resulting loss of value of the bonds was a consequence of the City's taking of the subject property. The court noted the intervenors were, by their own certification, sophisticated investors who assumed the known risk that the

-14-

subject property might be taken by the City. The court further noted that the language used by the bondholders in their petition constituted an admission that the diminution of the bonds' value was a consequence, an indirect result, of the City's taking of the subject property, evincing their "attempt to recover for the consequences of their known risky investment." We think the circuit court correctly assessed the situation concerning the bonds' loss of value.

Contrary to the bondholders' assertion that their right to receive incremental real estate taxes from the underlying property constituted a protected property interest, no compensation was required for the bonds' loss in value. Here, the contractual terms and the explicit language of the bonds provided that repayment was to be exclusively from incremental taxes, *if any*. As the City points out, the bondholders had no legitimate expectation of guaranteed repayment; in fact, as the language of the bonds makes clear, the bondholders do not have the right to compel the Village to exercise its taxing power to pay the bonds.

As the City further notes, the existence of the incremental taxes, which was the only security for the bonds, was far from a guaranteed income stream from the bonds. Rather, it was contingent on conditions outside the bondholders' control. The City posits numerous situations that might have prevented the generation of incremental taxes, such as a decline in the property's value below the assessment value; such decline might be the result of failure of the project, a general downturn in the economy, or a lessening of the desirability of the location, among other things, and if, for any of those reasons, incremental taxes did not exist, the bondholders would not receive anything. Furthermore, incremental taxes depended on the Village's collection of real estate taxes, which would not occur if, for example, a private entity had purchased the property

for some tax-exempt use. In such instance, just as in the taking of the property by the City, the incremental taxes would cease to be available for collection. The situation here is like that presented in <u>Mullen</u>, in that the bonds here were created upon a statutory basis and ultimately rendered worthless as a consequence of a lawful taking. There, however, the bondholder could, upon the city's default, enforce the municipality's right to collect the assessments, while here, the bondholders do not even have the right to compel the Village to exercise its taxing power for payment of the bonds. Again, the bondholders' assertion concerning the existence of incremental taxes did not constitute an entitlement to such revenue but was, rather, merely an expression of their expectation of such.

ProLogis and the bondholders support their assertion concerning such purported right or entitlement with the statutory origin of the ordinances creating the TIF and the bonds. However, there is no dispute that the TIF was created pursuant to statutory authority. Other than the statutory basis for the bonds' creation, which is not at issue, the bondholders rely primarily upon four federal cases to support their position. Thus, the bondholders attempt to support their position with cases which are not binding on this court (see, *e.g.*, <u>Bowman v. American River Transportation Co.</u>, 217 Ill. 2d 75, 91-92, 838 N.E.2d 94 (2005)) and essentially without support in Illinois law. Even considering their authorities, we nonetheless find the four cases readily distinguishable in that they involve encumbrances on the real property at issue.

In <u>United States v. Aho</u>, 68 F. Supp. 358 (D. Or. 1944), the federal government condemned property within a drainage district that had been established under Oregon law. There, the district claimed a right to be compensated for assessments it was authorized to impose

1-07-0108

in the future on the condemned land. Under state statute, the drainage district was created as a public corporation; the district issued bonds for building certain improvements and it assessed the properties that benefitted, in order to pay for the bonds. Aho, 68 F. Supp. at 360-61. The court ultimately concluded that the future assessments constituted an encumbrance on the real property. Aho, 68 F. Supp. at 360-66. Likewise, United States v. Florea, 68 F. Supp. 367 (D. Or. 1945), also involved condemnation by the federal government of land within an Oregon drainage district, which sought compensation for future assessments. Florea, 68 F. Supp at 367-68. There, the court held that the condemnation was "destroying the right of the landowners in the aggregate, to levy upon the parcel," and that future drainage assessments were "appurtenant to the fee of the condemned" land and therefore passed to the government with the fee. Florea, 68 F. Supp at 375.

The court in People ex rel. v. 25.09 Acres of Lands, 329 F. Supp. 230 (S.D. Cal. 1971), reached a similar conclusion: there, the federal government operated an irrigation project located within the boundaries of land the state sought to acquire for highway purposes and, after the state condemned the land, the federal government sought compensation for future annual assessments. The court held that, under California and federal law, the future assessments were an equitable servitude upon the land, thus requiring compensation to the federal government. 25.09 Acres of Lands, 329 F. Supp. at 239-40. Similarly, in United States v. 129.4 Acres of Land, 446 F. Supp. 1 (D. Ariz. 1976), where condemned land was subject to assessment for an irrigation project, the court held there to be a compensable interest where the obligations and benefits from the district were "appurtenant to the land within the [d]istrict" and condemnation would cause the remaining

-17-

landowners to pay increased assessments for the irrigation system. 129.4 Acres of Land, 446 F. Supp. at 5.

Unlike the assessments in those four cases, the bonds in the instant case do not encumber the fee simple title to the redevelopment property. They are, rather, separate. Again, as pointed out by the City, the bonds here were not secured by the property. Further, we find the bondholders' arguments concerning the intent of the TIF Act (65 ILCS 5/11-74.4-1 *et seq.* (West 2006) ("Tax Increment Allocation Redevelopment Act")), as well as their recitation of certain actions taken under the redevelopment agreement to be irrelevant. Thus, here, as in Mullen, no compensable interest was held by the bondholders. Having so determined, we need not discuss the bondholders' further analogies to state charters,[2] liens, or the doctrine of vested rights (arising

---

[2] In their reply brief, the bondholders insist particularly that they have a property interest similar to the toll company's right to collect tolls in City of Belleville v. St. Clair County Turnpike Co., 234 Ill. 428, 84 N.E. 1049 (1908). There, a municipality took possession of the company's turnpike after extension of the city limits by annexation and was granted an injunction restraining the further collection of tolls; the company's charter had given it the right to collect tolls so long as the state failed to purchase the road. The court, considering the statute governing the toll road operation, decided that due process was violated by taking the turnpike without compensation (City of Belleville, 234 Ill. at 437); further, such taking was not justified by the exercise of police powers (City of Belleville, 234 Ill. at 437-39). However, in the instant case, as previously stated, there is no issue as to the statutory basis for the taking of the real property or the lawfulness of the taking of the real property.

from performance and detrimental reliance) in the context of zoning law, which we find also to be irrelevant. Likewise, because the bonds were not secured by the subject real property taken by the City, the bondholders' additional claims of greater protection under the Illinois Constitution, as well as their assertions concerning the assumption of risk for their investment, are unavailing.

Therefore, because the bonds at issue in the instant case were not secured by the real property that was taken by the City, the circuit court properly denied the inverse condemnation claim. Rather, under the specific circumstances presented here, the loss in value of the bonds was, as in <u>Mullen</u>, a consequence of a lawful taking for which no compensation was required. Accordingly, we affirm the judgment of the circuit court.

Affirmed.

GALLAGHER and O'MARA FROSSARD, JJ., concur.

**REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT**

---

**THE CITY OF CHICAGO, a Municipal Corporation,**

**Plaintiff-Appellee,**

**v.**

**PROLOGIS, a Maryland Real Estate Investment Trust, f/k/a ProLogis Trust, f/k/a Security Capital Industrial Trust,**

**Defendant-Appellant**

**(Dennis J. Hiffman; John F. Cash; Sylvia Doyne Collins Irrevocable Trust dated 4/10/96; Keith Bank Declaration of Trust dated 12/14/94; Edward R. Hulina Trust dated 5/10/94; JKS-2D Two Trust; Mark D. Christensen; Holly D. Hulina Trust dated 5/10/94; Elizabeth E. Hulina Trust dated 5/10/94; Bonnie E. Hulina Trust dated 5/10/94; and Richard E. Hulina Trust dated 5/10/94,**

**Intervenors-Appellants;**

**ProLogis-Macquarie Illinois-Ohio, LLC, a Delaware Limited Liability Company; ProLogis O'Hare, LLC, a Delaware Limited Liability Company; Crane and Norcross; Prudential Insurance Company of America; American National Bank & Trust Company of Chicago; ProLogis Management, Inc., a Delaware Corporation; Concordia International Forwarding Corporation; JAL Trans, Inc.; Purolator USA, Inc., an Illinois Corporation; Morrison Express Corporation, a California Corporation; Kuehne & Nagel, Inc., a California Corporation; Exel Global Logistics, Inc., a New York Corporation; Aeroground, Inc., a California Corporation; Hellmann Worldwide Logistics, Inc., a Delaware Corporation; Catamount Holdings, LLC, an Illinois Limited Liability Company; Hassett Storage Warehouse, Inc., an Illinois Corporation; Nippon Express, USA, Inc., an Illinois Corporation; Maria Pappas, Cook County Treasurer; David Orr, Cook County Clerk; John L. Novak, Treasurer and County Collector of DuPage County; Gary A. King, County Clerk of DuPage County; and Unknown Owners,**

**Defendants.)**

---

No. 1-07-0108

**Appellate Court of Illinois**
**First District, Fifth Division**

**June 6, 2008**

_____

**PRESIDING JUSTICE FITZGERALD SMITH delivered the**
**opinion of the court:**
**Gallagher and O'Mara Frossard, JJ., concur.**

_____

**Appeal from the Circuit Court of Cook County**
**06 L 50329**
**The Hon. Sheldon Gardner, Judge Presiding.**

_____

**FOR DEFENDANT-APPELLANT and**
**INTERVENORS-APPELLANTS:**

**William E. Ryan**
**Michael W. Ryan**
**Lauren E. Ryan**
**Ryan & Ryan**
**33 N. Dearborn St., Suite 1530**
**Chicago, IL 60602**


**William R. Quinlan**
**James A. Niewiara**
**Brian J. Alesia**
**Quinlan & Carroll, Ltd.**
**30 North LaSalle St., Suite 2900**
**Chicago, IL 60602**

**FOR PLAINTIFF-APPELLEE:**

**Benna Ruth Solomon**
**Deputy Corporation Counsel**
**Myriam Zreczny Kasper**
**Chief Assistant Corporation Counsel**
**Christopher Grunewald**
**Assistant Corporation Counsel**
**Of Counsel**

**Mara S. Georges**
**Corporation Counsel of the City of Chicago**
**30 N. LaSalle St., Suite 800**
**Chicago, IL 60602**