# Illinois Official Reports

## Appellate Court

<div style="border:1px solid">

*Hampton v. Metropolitan Water Reclamation District of Greater Chicago*,
2015 IL App (1st) 132317

</div>

| | |
|---|---|
| Appellate Court Caption | JENICE HAMPTON, SHARON BANKS-REVIS, CLAIRE BATHERSON, MARK BATHERSON, THERESA BECTON, MAURICE BREWSTER, KIMBERLY DAVIDSON, CLAUDIA DUNCAN, JU WANNA L. ELERY, NANCY ELERY, VALENCIA GOODLOW, RENITA GRIMES, VENETTA JOHNSON, FRANK KOLB, JOHNNIE McCLINTON, MARLA McELROY, CARRIER NAVARRA, JANICE O'CONNER, LaVERM PARTEE, JARVIS REVIS, TERRY REVIS, DAVID ROSELUND, CASSANDRA SANDERS, KIMBERLY SUTTLE, ANITA THOMAS, MARTHA TURNER, GERALDINE WARD, JOSEPH WARD, ROY WHITE, SR., KITTY WILLIAMS, ISABELLE WRIGHT and LENETTE YARBAR, on Behalf of Themselves and All Persons Similarly Situated, Plaintiffs-Appellees, v. METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO, Defendant-Appellant.–ROBERT JACKLIN, DONNA JACKLIN, EARNESTINE PULLEN and SHYREE PULLEN, on Behalf of Themselves and All Persons Similarly Situated, Plaintiffs-Appellees, v. METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-2317 |
| Filed | August 14, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 11-CH-25985, 11-CH-25882 cons.; the Hon. Neil H. Cohen, Judge, presiding. |

| | |
|---|---|
| Judgment | Certified question answered; case remanded. |
| Counsel on Appeal | Ronald M. Hill, Lisa Luhrs Draper, James J. Zabel, and Ellen M. Avery, all of Metropolitan Water Reclamation District of Greater Chicago, of Chicago, for appellant. |
| | Glen J. Dunn, Jr., and Joel T. Finch, both of Glen J. Dunn & Associates, Ltd., and Jeffrey Grant Brown, of Jeffrey Grant Brown, P.C., both of Chicago, for appellees. |
| Panel | JUSTICE GORDON delivered the judgment of the court, with opinion. Presiding Justice Palmer and Justice Reyes concurred in the judgment and opinion. |

## OPINION

¶ 1    On July 22, 2011, the plaintiffs, Jenice Hampton, Sharon Banks-Revis, Claire Batherson, Mark Batherson, Theresa Becton, Maurice Brewster, Kimberly Davidson, Claudia Duncan, Ju Wanna L. Elery, Nancy Elery, Valencia Goodlow, Renita Grimes, Venetta Johnson, Frank Kolb, Johnnie McClinton, Marla McElroy, Carrier Navarra, Janice O'Conner, LaVerm Partee, Jarvis Revis, Terry Revis, David Roselund, Cassandra Sanders, Kimberly Suttle, Anita Thomas, Martha Turner, Geraldine Ward, Joseph Ward, Roy White, Sr., Kitty Williams, Isabelle Wright and Lenette Yarbar, on behalf of themselves and all others similarly situated, filed a complaint against the Metropolitan Water Reclamation District of Greater Chicago (District). The complaint alleged that the plaintiffs' private property was damaged and/or destroyed by flooding following a heavy rainfall on July 23-24, 2010. The complaint alleged that the defendant's control and management of the Chicago Area Waterways System was responsible for the flooding and the resulting damage and/or destruction of their property.

¶ 2    Count I of the complaint sought damages under section 19 of the Metropolitan Water Reclamation District Act (70 ILCS 2605/19 (West 2010)) (Act). Count II of the complaint alleged that the plaintiffs' private property was taken and damaged by the defendant for public use without just compensation in violation of the Illinois Constitution. Ill. Const. 1970, art. I, § 15. The plaintiffs alleged specifically as follows:

"a. The [defendant] utilized the above-referenced flood-relief mechanism to prevent flooding in parts of the greater Chicago area and caused significant flooding to the private property of the plaintiffs.

b. Members of the class were deprived of the use of their homes from backup from the public sewers and overtopping of Addison Creek and Salt Creek.

c. Homes, personal belongings, basements, and other private property were damaged or destroyed from the flooding, backup from the public sewers, and the overtopping of Addison Creek and Salt Creek.

d. The [defendant] did not compensate the plaintiffs for the deprivation or damage to their homes."

¶ 3 The defendant filed a combined motion to dismiss the complaint pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2010)) (the Code). Pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2010)), the circuit court dismissed count I with prejudice. The court denied the motion as to count II. The court rejected the defendant's contention that temporary flooding was not a taking under the Illinois Constitution as the Illinois Supreme Court held in *People ex rel. Pratt v. Rosenfield*, 399 Ill. 247 (1948). The court determined that under *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. ___, 133 S. Ct. 511 (2012) whether temporary flooding constituted a taking could not be decided as a matter of law.

¶ 4 On July 25, 2011, the plaintiffs, Robert Jacklin, Donna Jacklin, Earnestine Pullen and Shyree Pullen, on behalf of themselves and all others similarly situated, filed a complaint identical to the one filed in this case against the defendant. The defendant's motion to dismiss the Illinois constitutional claim had likewise been denied in that case. The circuit court granted the defendant's motion to consolidate the two cases.

¶ 5 The court denied the defendant's motion for reconsideration, but granted its motion to certify the following question for immediate appeal pursuant to Illinois Supreme Court Rule 308(a) (eff. Feb. 26, 2010):

"Does *Arkansas Game and Fish Commission v. U.S.*[,] 133 S. Ct. 511 (2012) overrule the Illinois Supreme Court's holding in *People ex rel. Pratt v. Rosenfield*, 399 Ill. 247 (1948) that temporary flooding is not a taking?"

¶ 6 On July 23, 2013, the defendant filed its petition for leave to appeal which was granted by this court on August 7, 2013. On October 23, 2013, this court granted leave to the Village of Glenview, the Illinois Association of Wastewater Agencies and the Illinois Municipal League to file *amicus curiae* briefs.

¶ 7                                    ANALYSIS
¶ 8                              I. Standard of Review
¶ 9 "Illinois Supreme Court Rule 308 provides a remedy of permissive appeal from interlocutory orders where the trial court has deemed that they involve a question of law as to which there is substantial ground for difference of opinion and where an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Goodman v. Hanson*, 408 Ill. App. 3d 285, 292 (2011) (citing Ill. S. Ct. R. 308 (eff. Feb. 1, 1994)). Legal questions presented in a Rule 308 appeal are reviewed *de novo*. *Goodman*, 408 Ill. App. 3d at 292. *De novo* consideration means that the reviewing court performs the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 10 II. Discussion

¶ 11 As an initial matter, defendant claims that plaintiffs failed to allege that the District intentionally created the flooding, and that therefore this case is factually distinguishable from *Arkansas Game & Fish Comm'n.* However, under Rule 308, we will only answer a question of law and do not make factual determinations. *Goodman*, 408 Ill. App. 3d at 292; see also *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 469 (1998); *Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill. App. 3d 995, 998 (1991). The question certified by the trial court asks only whether our Illinois Supreme Court's case of *People ex rel. Pratt v. Rosenfield*, 399 Ill. 247 (1948) has been overruled by the United States Supreme Court's case of *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. ___, 133 S. Ct. 511 (2012). The answer to this question does not require us to analyze the merits of plaintiffs' case and we will not do so. Accordingly, we will not address if the plaintiffs' case is factually distinguishable from *Arkansas Game & Fish Comm'n*, we will only address if the United States Supreme Court's decision in *Arkansas Game & Fish Comm'n* overrules the Illinois Supreme Court's holding in *Pratt* that temporary flooding can never constitute a taking.

¶ 12 Both the United States Constitution and the Illinois Constitution prohibit the taking of private property for public use without paying just compensation. *City of Chicago v. Prologis*, 236 Ill. 2d 69, 77 (2010). "[T]he fifth amendment to the United States Constitution, made applicable to the states through the fourteenth amendment, provides that private property shall not 'be taken for public use, without just compensation.' " *Prologis*, 236 Ill. 2d at 77 (quoting U.S. Const., amend. V). "The Illinois Constitution of 1970 states: 'Private property shall not be taken or damaged for public use without just compensation ***.' " *Prologis*, 236 Ill. 2d at 77-78 (quoting Ill. Const. 1970, art. I, § 15). Private property includes real, personal, tangible and intangible property. *Prologis*, 236 Ill. 2d at 78.

¶ 13 "Illinois courts, not federal courts, are the arbiters of state law. No federal court can interpret the meaning of our state constitutional provisions." *Hope Clinic for Women, Ltd. v. Flores*, 2013 IL 112673, ¶ 79. The plaintiffs' taking claim did not invoke the fifth amendment of the United States Constitution. Nonetheless, when a provision in the state constitution is identical to or synonymous with the federal constitutional provision, Illinois follows a limited lockstep approach when construing the provision. *People v. Caballes*, 221 Ill. 2d 282, 309 (2006). Under the limited lockstep approach, where the provisions are identical or nearly identical, the reviewing court interprets state constitutional provisions consistently with the United States Supreme Court's interpretation of their federal constitutional counterparts unless there is some reason, such as the language of the provision, the convention debates and committee reports, or state custom and practice that indicate that the state provision is to be construed differently. *Hope Clinic for Women*, 2013 IL 112673, ¶ 83.

¶ 14 The Illinois takings clause provides protection greater than that of its federal counterpart. *International College of Surgeons v. City of Chicago*, 153 F.3d 356, 363 (7th Cir. 1998). The greater protection stems from the fact that the Illinois takings clause not only guards against a governmental taking of private property but also guards against governmental damage to private property. *International College of Surgeons*, 153 F.3d at 363.

¶ 15 We first turn to the progression of Illinois law regarding takings clause jurisprudence for temporary flooding. Prior to the adoption of the 1870 Illinois Constitution, property owners had no claim for damages caused by the construction or maintenance of a public

- 4 -

improvement unless there had been a physical invasion of the property. This was true even where property was rendered practically valueless. *Horn v. City of Chicago*, 403 Ill. 549, 554 (1949). The framers of the 1870 Illinois Constitution added the provision that "private property should not be damaged for public use without just compensation." *Horn*, 403 Ill. at 554. "It is under this last constitutional provision, and none other, that a landowner may claim compensation for the destruction or disturbance of easements of light and air, and of accessibility, or of such other intangible rights as he enjoys in connection with, and as incidental to, the ownership of the land itself." *Horn*, 403 Ill. at 554-55.

¶ 16 In *People ex rel. Pratt v. Rosenfield*, 399 Ill. 247 (1948), the owners of improved property filed an amended complaint for a writ of *mandamus* seeking to compel the defendants to pay damages under the takings clause of the Illinois Constitution (then Ill. Const. 1870, art. II, § 13). The plaintiffs alleged that the defendants' removal of an old viaduct and the construction of a new one changed the street elevation and caused their property to flood. In order to continue the present use of the properties, the plaintiffs alleged that it was necessary to change the buildings' floor levels to afford street access and to prevent further flooding of their property. The plaintiffs further alleged that the flooding made their improved properties unfit for their purposes and damaged the equipment, machinery and supplies used in their businesses. The trial court dismissed the amended complaint. The plaintiffs filed a direct appeal to the supreme court.

¶ 17 On review, our supreme court upheld the dismissal of the amended complaint. The court noted that "an abutting property owner is not entitled to have condemnation proceedings instituted to determine damages to his property occasioned by public improvement where no part of his property is taken." *Pratt*, 399 Ill. at 250. The plaintiffs failed to allege that the surface water remained in the building, and therefore, the flooding did not amount to a physical taking of the property. *Pratt*, 399 Ill. at 251-52. Where no physical taking of the property occurred, the plaintiffs' remedy was an action at law for damages. *Pratt*, 399 Ill. at 251. See *Patzner v. Baise*, 133 Ill. 2d 540 (1990) (where the claims were for damage to personal property and interference with access to the real property and there was no physical taking of the property, the property owner was not entitled to eminent domain proceedings for compensation; the remedy was a complaint for damages).

¶ 18 In *Luperini v. County of DuPage*, 265 Ill. App. 3d 84 (1994), the landowners filed a complaint for a writ of *mandamus* to compel the institution of condemnation proceedings. The landowners alleged that the construction of a sewer pipe caused their property to flood and constituted a physical invasion of their property tantamount to an unconstitutional taking. Relying on *Pratt* and its progeny, the reviewing court held that "[b]ecause eminent domain law distinguishes between property that has been physically taken and property that has been damaged [citation], the property owner cannot, by *mandamus*, compel the institution of eminent domain proceedings where no part of the land is taken." *Luperini*, 265 Ill. App. 3d at 89. Whether a taking has occurred turns on the "temporal nature of the inundation." *Luperini*, 265 Ill. App. 3d at 89. Temporary accumulations of water caused by the construction of the sewer pipe did not constitute a taking without compensation. *Luperini*, 265 Ill. App. 3d at 89.

¶ 19 Despite the additional protections afforded by the Illinois takings clause, in *Pineschi v. Rock River Water Reclamation District*, 346 Ill. App. 3d 719 (2004), the reviewing court noted that the "Illinois takings law appears to track federal takings law insofar as pertinent here," and treated the federal and the Illinois takings clauses as a single theory of recovery.

*Pineschi*, 346 Ill. App. 3d at 725. See *Henderson v. City of Columbus*, 827 N.W.2d 486, 493 (Neb. 2013) (even though the takings clause of the state constitution provided broader protection than the federal constitution, in analyzing compensable taking or damaging for public use claims, the reviewing court treated federal and state constitutional law as coterminous).

¶ 20    In *Pineschi*, the plaintiff brought an action for damages, alleging that the Rock River Water Reclamation District's actions caused a sewage backup into his home, forcing his family to vacate the premises for several days. The District failed to appear, and the trial court entered a default judgment and awarded damages to the plaintiff. The appellate court upheld the trial court's denial of the District's section 2-1401 motion to vacate the default judgment (735 ILCS 5/2-1401 (West 2000)) on the ground that the District failed to establish a meritorious defense under the takings clauses of the United States and Illinois Constitutions.

¶ 21    Treating the federal and the Illinois takings clauses as a single theory of recovery, but without distinguishing *Pratt* or otherwise addressing the holding in that case, the court held that the allegation that the District's acts caused a sewage backup, resulting in so much damage that the plaintiff and his family were forced to evacuate their residence for several days, constituted a taking requiring compensation even though the deprivation was temporary rather than permanent. *Pineschi*, 346 Ill. App. 3d at 727 (citing *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, California*, 482 U.S. 304, 318 (1987)).

¶ 22    We now turn to *Arkansas Game & Fish Comm'n*. In *Arkansas Game & Fish Comm'n*, the Arkansas Game and Fish Commission (Commission) sued the government alleging that over a six-year period, authorized temporary deviations from a water control plan instituted by the United States Army Corps of Engineers caused flooding, which resulted in the destruction of timber, changes in the character of the terrain and necessitated costly reclamation measures. The Commission maintained that the temporary deviations constituted a taking of property entitling the Commission to compensation. Following a bench trial, the Court of Federal Claims ruled in favor of the Commission and awarded damages. *Arkansas Game & Fish Comm'n v. United States*, 87 Fed. Cl. 594 (Fed. Cl. 2009). On review, the Federal Circuit Court reversed. From its review of prior United States Supreme Court decisions, the court determined that flooding cases were treated differently than other takings cases. The court concluded that government-induced flooding gave rise to a taking claim only if the flooding was permanent or inevitably recurring. *Arkansas Game & Fish Comm'n v. United States*, 637 F.3d 1366, 1378 (Fed. Cir. 2011).

¶ 23    The Supreme Court reversed the Federal Circuit Court's judgment. Based on its own review of its precedents in which it had held that government-induced flooding could constitute a taking and that takings need not be permanent to be compensable, the Court determined that the temporary duration of a government-induced flood did not determine its compensability. The Court maintained that it had never authorized a "blanket temporary-flooding exception to our Takings Clause jurisprudence," and declined to create one in the present case. *Arkansas Game & Fish Comm'n*, 568 U.S. at ___, 133 S. Ct. at 519-20 (the Court explained that the reference to "permanent invasion of the land" in *Sanguinetti v. United States*, 264 U.S. 146 (1924) was in reference to prior flooding cases, all of which involved permanent rather than temporary flooding, and it was decided prior to the

Court's consideration of the World War II temporary takings cases (internal quotation marks omitted)).

¶ 24     The Court concluded by saying:

"We rule today, simply and only, that government-induced flooding temporary in duration gains no automatic exemption from Takings Clause inspection. When regulation or temporary physical invasion by government interferes with private property, our decisions recognize, time is indeed a factor in determining the existence *vel non*[1] of a compensable taking." *Arkansas Game & Fish Comm'n*, 568 U.S. at ___, 133 S. Ct. at 522.

¶ 25     In contrast to the blanket temporary-flooding exception holding in *Pratt*, the Supreme Court instructed that temporary physical invasions should be assessed on the facts of the particular case. *Arkansas Game & Fish Comm'n*, 568 U.S. at ___, 133 S. Ct. at 521-22 (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 n.12 (1982)). Moreover, like other takings cases, flooding cases should be assessed on their facts and not by resorting to blanket exclusionary rules. *Arkansas Game & Fish Comm'n*, 568 U.S. at ___, 133 S. Ct. at 521 (citing *United States v. Central Eureka Mining Co.*, 357 U.S. 155, 168 (1958)). The Supreme Court set forth three factors relevant to determining whether there has been a compensable taking: (1) the duration, (2) the intended or foreseeable result of authorized government action and (3) the character of the land and the owner's reasonable economic expectations regarding the use of the property. *Arkansas Game & Fish Comm'n*, 568 U.S. at ___, 133 S. Ct. at 522.

¶ 26     Generally, a single instance of flooding may not constitute a taking. However, we find that to the extent that *Pratt* holds that temporary flooding of property can never be a compensable taking under the Illinois Constitution, it is effectively overruled by *Arkansas Game & Fish Comm'n*.

¶ 27                                    CONCLUSION

¶ 28     Certified question answered; case remanded.

---

[1] " '[O]r not.' " Black's Law Dictionary 1589 (8th ed. 2004).