# Illinois Official Reports

## Appellate Court

---

### *Sorrells v. City of Macomb*, 2015 IL App (3d) 140763

---

| | |
|---|---|
| Appellate Court Caption | DUANE SORRELLS and MILDRED SORRELLS, Plaintiffs-Appellants, v. THE CITY OF MACOMB, a Municipal Corporation, Defendant-Appellee (DK Linde Construction, Inc., Defendant). |
| District & No. | Third District<br>Docket No. 3-14-0763 |
| Filed<br>Rehearing denied | October 23, 2015<br>November 30, 2015 |
| Decision Under Review | Appeal from the Circuit Court of McDonough County, No. 07-CH-38; the Hon. Rodney Clark, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Stanley L. Tucker (argued) and Carissa Ann Bryant, both of Hartzell, Tucker & Hartzell, of Carthage, for appellants.<br><br>Bhairav Radia (argued), of O'Halloran, Kosoff, Geitner & Cook LLC, of Northbrook, for appellee. |
| Panel | JUSTICE CARTER delivered the judgment of the court, with opinion.<br>Justices Lytton and Schmidt concurred in the judgment and opinion. |

# OPINION

¶ 1    Plaintiffs, Duane and Mildred Sorrells, filed a complaint against defendant, DK Linde Construction, Inc. (DK Linde), for flooding that occurred on their property allegedly caused by DK Linde developing the adjacent property. Plaintiffs amended the complaint to add a claim for inverse condemnation against defendant, the city of Macomb (City), who owned the streets that had been developed by DK Linde. The trial court granted the City's section 2-615 motion to dismiss the plaintiffs' inverse condemnation claim with prejudice. 735 ILCS 5/2-615 (West 2012). The plaintiffs appealed the dismissal of their inverse condemnation claim. We affirm the trial court's judgment.

¶ 2                                    FACTS
¶ 3                    I. Original Complaint Against DK Linde
¶ 4    On August 30, 2007, plaintiffs filed a one-count complaint for an injunction against DK Linde, who was developing a residential complex adjacent to their property known as the Scotch Pine Planned Unit Development (Scotch Pine). Plaintiffs alleged that nonpercolating surface water had naturally drained from defendant's property onto their property until 1997 when DK Linde installed a detention basin that altered the natural flow of the surface water drainage. Since the installation of the basin, DK Linde acquired additional property to develop Phase 2 of Scotch Pine, which included a new and expanded detention basin and drain. The plaintiffs alleged that DK Linde diverted the natural flow of water and caused an increased amount of surface water to drain onto their property. Plaintiffs requested that DK Linde be enjoined from unreasonably increasing the surface water that drained onto their land and that DK Linde be ordered to install and maintain appropriate drainage facilities.

¶ 5    After DK Linde answered the complaint, plaintiffs filed a motion for partial summary judgment with the affidavit of plaintiff, Duane Sorrells, attached thereto. Sorrells attested to the allegations of the complaint and attested to the fact that defendant had moved the point at which water discharged onto plaintiffs' land. In response, DK Linde filed the affidavit of the engineer who had planned the development. The engineer attested that: (1) defendant did not unreasonably divert water; (2) the rate of surface water flow onto plaintiffs' land would decrease; (3) the discharge from Scotch Pine had not been relocated; (4) the development complied with applicable engineering standards and the subdivision ordinance; and (5) the defendant's storm water management plan did not alter the point of discharge.

¶ 6                II. Amended Complaint Against DK Linde and the City
¶ 7    On March 15, 2012, with leave of court, plaintiffs filed an amended complaint, alleging two additional counts against DK Linde and two counts against the City. In count II against DK Linde, the plaintiffs alleged that the construction of Phase 2 of Scotch Pine would unreasonably discharge water onto their property that had not previously drained onto their property and the drainage system, as designed, would create an unnatural channel on their property and cause an increase of surface water that was diverted from other drainage basins to flow toward their land. For count II, plaintiffs requested a permanent injunction against DK

Linde. In count III against DK Linde for negligence, plaintiffs realleged the allegations of count II and that defendant's trespass and other conduct would damage their property. For count III, plaintiffs requested money damages.

¶ 8 In count IV for inverse condemnation against the City, the plaintiffs alleged that DK Linde was developing a residential complex adjacent to the their property called Phases 1 and 2 of Scotch Pine, which included the installation of residential structures, streets, lawns, drainage ways, and other improvements, with the streets having been dedicated to the City. Plaintiffs alleged that the surface water from the streets and the development on Phase 1 was directed into unnatural channels on their land and that the surface water from Phase 2 had not previously drained naturally onto their land. Plaintiffs claimed that the drainage design would cause water from the development to unreasonably discharge from two storm water detention basins onto their property where there had been no natural drainage, causing erosion, creating an unnatural channel and increasing the amount of surface water drainage.

¶ 9 Plaintiffs further alleged that the City failed to follow applicable drainage standards, engineering standards, and ordinances in approving the construction and design of Phases 1 and 2. Plaintiffs alleged that the unnatural and diverted drainage of surface water had and would in the future result in a permanent, continuing, and substantial physical interference with the use and enjoyment of their land, amounting to a taking of a drainage easement by the City for its streets and public ways, which would continue in the future as further streets and public ways were developed in Phase 2. Plaintiffs claimed that the taking was "by invasion by taking drainage rights and by permanently taking [their] lands due to an increase in the water level of plaintiffs' lake." Plaintiffs requested, *inter alia*, money damages for damage to their land not taken and an order of *mandamus* requiring the City to initiate condemnation proceedings for the portion of their property that had been taken. In count V, plaintiffs alleged negligence against the City based on the City's alleged breach of duty to refrain from altering the natural flow of water.

¶ 10 In response, the City filed a motion to dismiss counts IV and V pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2012)). The City argued, *inter alia*, that the plaintiffs' claim regarding Phase 1 should be dismissed pursuant to the applicable one year statute of limitations. The City also argued that it was immune from liability under section 2-104 of the Local Governmental and Governmental Employees Tort Immunity Act (Illinois Tort Immunity Act) (745 ILCS 10/2-104 (West 2012)) (providing immunity to a local public entity for issuing a permit, license, certificate, approval, or similar authorization), section 2-105 of the Illinois Tort Immunity Act (745 ILCS 10/2-105 (West 2012)) (providing immunity to a local public entity for the failure to inspect or for an inadequate or negligent inspection), and section 2-103 of the Illinois Tort Immunity Act (745 ILCS 10/2-103 (West 2012)) (providing immunity to a local public entity for adopting or failing to adopt an enactment or failing to enforce a law).

¶ 11 In support of its motion to dismiss, the City provided the affidavit of Ed Basch, who had been the community development coordinator for the City. According to Basch's affidavit, the City would transmit proposed engineering plans to a professional engineer for review. The engineering plans for Phase 1 were prepared by McClure Engineering, Inc., and reviewed by Benton & Associates, Inc., who found the Phase 1 drainage calculations complied with the Macomb Municipal Code and Illinois drainage requirements. The city council approved the final subdivision plans for Phase 1. The engineering plans for Phase 2 were prepared by

McClure Engineering and reviewed by Hutchison Engineering, Inc., who offered suggestions for improvements to the detention basin. The city council approved Phase 2 in a 5 to 3 vote.

¶ 12 The trial court granted the City's motion to dismiss "on the immunity grounds," with leave granted to plaintiffs to amend their complaint.

¶ 13                                III. Second-Amended Complaint

¶ 14 The plaintiffs filed a second-amended complaint, asserting claims of inverse condemnation in count IV and negligence in count V. In response, the City filed a section 2-619 motion to dismiss, attaching the Basch affidavit in support thereof.

¶ 15 On July 17, 2013, the trial court found that the City was immune from tort liability for the alleged negligence count, which was dismissed with prejudice. The trial court also dismissed the inverse condemnation count, with leave granted to amend, if possible, to allege that "it is the streets in and of themselves that's causing the taking not th[e] entire subdivision." The plaintiffs filed a motion for the trial court to reconsider its dismissal of counts IV and V, which the trial court denied.

¶ 16                                IV. Third-Amended Complaint

¶ 17 On August 5, 2013, plaintiffs filed a third-amended complaint, alleging an inverse condemnation claim against the City in count IV. Plaintiffs alleged that they owned real estate adjacent to land on which DK Linde was developing a residential complex known as Phases 1 and 2 of Scotch Pine, which included "residential structures, street, lawns, drainage ways, and other improvements, which streets have been dedicated to the City." The surface water from the streets and the development on Phases 1 and 2 was being channeled and directed, by the streets, into unnatural channels onto their land and surface water from Phase 2 had not previously drained naturally onto their land. Plaintiffs alleged the water from the development, including from the streets, was channeled and directed by the streets to unreasonably discharge from two storm water detention basins onto the land: (1) where there had been no natural drainage channel; (2) where their land would be eroded into an unnatural channel on their property; (3) at a point where there had not been any natural drainage or runoff from Phase 2; (4) causing increased discharge from the streets due to the construction of residential facilities, streets and sidewalks, which would have ordinarily percolated into the soil, and from rooftops draining into the streets; (5) with the flow of surface water having never previously before flowed toward plaintiffs' land; (6) with the unreasonable and improper artificial drainage from the development and streets causing damage to their lake, dam, and other structures on plaintiffs' land; and (7) with the ditches and drainage facilities on Phases 1 and 2 unreasonably increasing the surface water drainage onto their land.

¶ 18 Plaintiffs further alleged that in approving the construction and design of Phases 1 and 2, the City failed to follow applicable drainage standards, engineering standards, laws and ordinances, and failed to consider the damage to plaintiffs' land. Plaintiffs claimed that the unnatural and diverted drainage of surface water in increased amounts, which was diverted onto their land by the streets, resulted in a "permanent, continuing and substantial interference with [their] use and enjoyment of their land, amounting to a taking of an interest in plaintiffs' property without compensation." The plaintiffs claimed that the City: (1) discharged surface water from the streets and other locations onto their land that "would not normally flow upon

plaintiffs' lands"; (2) diverted surface water from the streets "in channels other than natural drainage channels"; (3) failed to comply with City ordinances; (4) caused flooding on their property; (5) failed to correct defects in the design and construction of the streets; and (6) by way of the streets, unreasonably increased the flow of surface water from the development onto their land "beyond a range consistent with the policy of reasonableness of use which led initially to the good-husbandry exception." Plaintiffs claimed that the City had taken a drainage easement and drainage rights, and "the unreasonable and unauthorized discharge of surface water and increase thereof from the defendant's streets" had and will cause damage to other property that was not taken. For relief, plaintiffs requested, *inter alia*, money damages and an order of *mandamus* requiring the City to initiate condemnation proceedings.

¶ 19    On September 20, 2013, the City filed a section 2-619.1 combined motion to dismiss count IV of the third-amended complaint pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (Code). See 735 ILCS 5/2-615, 2-619, 2-619.1 (West 2012). On January 17, 2014, the trial court noted that the third-amended complaint was not specific as to the streets being the cause of the alleged taking and the plaintiffs "continued to attempt to bootstrap the entire subdivision into the complaint and the City enjoys certain immunities in relation to the fact that this was a private subdivision." The trial court granted the City's section 2-615 motion to dismiss count IV with prejudice, finding count IV failed to state a cause of action for inverse condemnation. Thereafter, the trial court denied the plaintiffs' motion to reconsider but granted their request for a finding that there was no just reason to delay an appeal pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010). Plaintiffs appealed.

¶ 20                                    ANALYSIS

¶ 21    On appeal, plaintiffs argue that the trial court erred in granting the City's section 2-615 motion to dismiss count IV of their third-amended complaint for failure to state a claim for inverse condemnation. Plaintiffs claim that the allegations were sufficient wherein they alleged a taking by the City of a drainage easement to drain surface water onto their land, channeled by the City's streets, in unreasonable amounts, and in an unnatural channel.[1] The City argues the allegations were insufficient to support plaintiffs' claim of a governmental taking. The sole issue presented for review is whether the plaintiffs' allegations were sufficient to establish a cause of action for inverse condemnation.

¶ 22    This court reviews *de novo* an order granting a section 2-615 motion to dismiss. *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on the face of

---

[1]Under Illinois common law, a landowner has a duty to refrain from increasing the natural flow of surface water onto the property of an adjacent landowner. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 369 (2003) (citing *Templeton v. Huss*, 57 Ill. 2d 134, 141 (1974)). When surface water falling or coming on one tract naturally descends upon the other, the owner of the higher (dominant) land has a natural easement in the lower (servient) tract. *Mileur v. McBride*, 147 Ill. App. 3d 755, 758 (1986). The owner of an upper field cannot construct drains or ditches to create new channels for water in a lower field. *Templeton*, 57 Ill. 2d at 138-39 (quoting *Peck v. Herrington*, 109 Ill. 611, 619 (1884)). However, under the "good husbandry" exception, the owner of dominant land may increase or alter the flow of water upon a servient estate as may be required by good husbandry. *Id.* at 139. Nonetheless, the good-husbandry exception is limited to that which is incidental to the reasonable development of the dominant estate. *Id.*; *Bollweg v. Richard Marker Associates, Inc.*, 353 Ill. App. 3d 560, 575 (2004).

the complaint and should not be granted unless it is clearly apparent that no set of facts can be proven that would entitle the plaintiff to relief. *Id.* The critical inquiry in determining whether a pleading should be dismissed pursuant to section 2-615 is whether the allegations, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted. *Kanerva v. Weems*, 2014 IL 115811, ¶ 33. Thus, we must determine whether the allegations in count IV of the third-amended complaint, construed in the light most favorable to the plaintiffs, were sufficient to establish a cause of action for inverse condemnation.

¶ 23    Both the United States Constitution and the Illinois Constitution prohibit the taking of private property for public use without just compensation. *Hampton v. Metropolitan Water Reclamation District of Greater Chicago*, 2015 IL App (1st) 132317, ¶ 12 (opinion not released for publication in the permanent law reports and is subject to revision or withdrawal). Specifically, the fifth amendment of the United States Constitution prohibits private property from being "taken for public use, without just compensation." U.S. Const., amend. V. The Illinois Constitution provides, "[p]rivate property shall not be taken or damaged for public use without just compensation." Ill. Const. 1970, art. I, § 15. The same provision was stated in the 1870 Illinois Constitution. Ill. Const. 1870, art. II, § 13.

¶ 24    Eminent domain is a state's sovereign power to take private property for public use, subject to the constitutional requirement that just compensation be paid. *City of Edwardsville v. County of Madison*, 251 Ill. 265, 266 (1911). In an eminent domain proceeding, the condemning body files a condemnation action under the Eminent Domain Act (735 ILCS 30/1-1-1 *et seq.* (West 2012)) to officially take real property from its owner. 735 ILCS 30/10-5-5 (West 2012).

¶ 25    In an inverse condemnation proceeding, the property owner initiates an action to obtain an order of *mandamus* to compel the government to file a condemnation claim. *Herget National Bank of Pekin v. Kenney*, 105 Ill. 2d 405, 411-12 (1985). There is a distinction between property that has been physically taken and property that has been damaged. *Patzner v. Baise*, 133 Ill. 2d 540, 546-47 (1990). Where no part of the land is taken, a property owner cannot, by *mandamus*, compel proceedings under eminent domain. *Id.* at 547; *Granite City Moose Lodge No. 272 v. Kramer*, 96 Ill. 2d 265, 270-71 (1983); *People ex rel. Pratt v. Rosenfield*, 399 Ill. 247, 250-51 (1948) (overruling by United States Supreme Court, in part, recognized in *Hampton*, 2015 IL App (1st) 132317, to the extent the *Pratt* holding is that a temporary flooding can never constitute a compensable taking under the Illinois Constitution); *Rigney v. City of Chicago*, 102 Ill. 64, 71-72 (1881); *Rothschild v. Baise*, 157 Ill. App. 3d 481, 483 (1987).

¶ 26    The addition of the word "damaged" in the 1870 Illinois Constitution, now found in the 1970 Illinois Constitution, provided for compensation to property owners whose property was "injuriously affected" by government action but there had not been a government taking. *Rigney*, 102 Ill. at 66; see also *Citizens Utilities Co. of Illinois v. Metropolitan Sanitary District of Greater Chicago*, 25 Ill. App. 3d 252, 255-57 (1974) (providing the word "damaged" within the 1870 constitution means some direct physical disturbance of a property right which gave the property additional value, the disturbance of which causes special damage in excess of that sustained by the general public). Before the addition of the word "damaged" to the Illinois Constitution, a landowner had no relief for property damage that was caused by a public improvement unless there was an actual physical invasion of the land itself. *Horn v. City of*

*Chicago*, 403 Ill. 549, 554 (1949). Section 15 of article I of the 1970 Illinois Constitution retained the addition of the word "damaged" and afforded a property owner in Illinois greater protection than its federal counterpart because the Illinois takings clause guarded against both a governmental taking of property and governmental damage to property. See, *e.g.*, *Hampton*, 2015 IL App (1st) 132317, ¶ 14; *International College of Surgeons v. City of Chicago*, 153 F.3d 356 (7th Cir. 1998). Thus, where no taking of property has occurred, the property owner's remedy for a governmental disturbance of a property right is an action at law for damages to recover compensation under the Illinois Constitution. *Patzner*, 133 Ill. 2d at 546-47; *Pratt*, 399 Ill. at 250-51; *Cuneo v. City of Chicago*, 379 Ill. 488, 493 (1942); *Rigney*, 102 Ill. at 67; *Euwema Co. v. McKay Engineering & Construction Co.*, 316 Ill. App. 650, 653 (1942).

¶ 27    There is "no magic formula" to determine, in every case, whether the government's interference with property is a "taking." *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. ___, ___, 133 S. Ct. 511, 518 (2012). Most takings claims turn on the specific facts of the case. *Id.* at ___, 133 S. Ct. at 518. Factors relevant to determining whether there has been a compensable taking are: (1) the duration of the physical invasion; (2) the degree to which the invasion was the intended or foreseeable result of authorized government action; (3) the character of the land and the owner's reasonable economic expectations regarding the use of property; and (4) the severity of the interference. *Id.* at ___, 133 S. Ct. at 522; *Hampton*, 2015 IL App (1st) 132317, ¶ 25.

¶ 28    In *Arkansas Game & Fish*, the United States Supreme Court focused on the factors of duration and foreseeability in holding that "government-induced flooding temporary in duration gains no automatic exemption from Takings Clause inspection." The United States Supreme Court in *Arkansas Game & Fish* addressed its prior decision in *Sanguinetti v. United States*, in which it held there was no taking where the factors of foreseeability and causation were not present where the government did not intend to flood the land and had no reason to expect that flooding would result from the construction of its canal. *Arkansas Game & Fish*, 568 U.S. at ___, 133 S. Ct. at 520 (citing *Sanguinetti v. United States*, 264 U.S. 146, 147-49 (1924)). Also, the property in *Sanguinetti* was subject to seasonal flooding prior to the construction of the canal and the landowner failed to show that the causal connection between the construction of the canal and the increased flooding was anything other than pure conjecture. *Id.* at ___, 133 S. Ct. at 520 (citing *Sanguinetti*, 264 U.S. at 149).

¶ 29    After *Arkansas Game & Fish*, public improvements that cause a temporary accumulation of water on property may be considered to be a taking in some circumstances. See *Hampton*, 2015 IL App (1st) 132317. Under the Illinois Constitution, a temporary flooding of property can give rise to either a taking or an action at law for damages, depending on the circumstances. See Ill. Const. 1970, art. I, § 15. Thus, the requirement within the Illinois Constitution that the government pay just compensation for property that has been either taken or damaged is satisfied with an action at law for damages where the property was damaged for public use but no part of the property was taken. See *Patzner*, 133 Ill. 2d at 546-47; *Horn*, 403 Ill. at 559; *Pratt*, 399 Ill. at 250-51; *Kane v. City of Chicago*, 392 Ill. 172, 175 (1945); *Catello v. Chicago, Burlington & Quincy R.R. Co.*, 298 Ill. 248, 256 (1921); *Euwema*, 316 Ill. App. at 653.

¶ 30    In this case, the plaintiffs alleged that the streets were constructed by DK Linde and "dedicated" to the City. According to plaintiffs' allegations, the City had taken the plaintiffs' property in the form of a "drainage easement" for the drainage of its streets. "It is well

established that the government may not take an easement without just compensation." *Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1352-53 (Fed. Cir. 2003) (quoting *United States v. Dickinson*, 331 U.S. 745, 748 (1947), and *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 834 (1987)). However, plaintiffs alleged that the private development as a whole caused the alleged unreasonable amount of surface water to drain onto their land from the detention and drainage basins.

¶ 31    Specifically, plaintiffs alleged, "the water from the development, including from the streets, is being channeled and directed by said streets and is and will be unreasonably discharged from two Storm Water Detentions Basins onto Plaintiffs['] [property]." At most, the allegations, taken as true, indicate that the increased drainage onto the plaintiffs' land was for the benefit of both the private development and the public streets. Although temporary or permanent government-induced flooding can constitute a taking of property by flooding, the flooding as alleged in this case was induced by the private developers, not government action. Plaintiffs' complaint makes clear that the water allegedly invading the plaintiffs' property was drainage from two storm water detention basins or other drainage basins.

¶ 32    Thus, the allegations of count IV of the third-amended complaint are insufficient to support plaintiffs' claim of a taking for public use where the alleged increased water drainage was coming from the entire development, including streets, through detention or drainage basins. The development was not a public property and the acceptance of the dedication of the streets inside the development does not give rise to a taking where the drainage was from the basins. In addition, plaintiffs failed to allege that the water draining from the development onto their land, in an unreasonable amount and unnatural channels, was the intended or foreseeable result, in whole or part, of the City's actions rather than that of the development. See *Bay Bottoms Drainage District v. Cache River Drainage District*, 295 Ill. 301 (1920); *Arkansas Game & Fish*, 568 U.S. at ___, 133 S. Ct. at 522 (property loss is compensable as a "taking" only when the government intended to invade a protected property interest or the invasion was the direct, natural, or probable result of authorized activity as opposed to a resulting incidental or consequential injury (citing *Ridge Line, Inc.*, 346 F.3d at 1355-56)).

¶ 33    Furthermore, condemnation cases traditionally arise from government action alone; not from multiple causes that would include actions of private actors, as in this case where the water was from the whole development flowing into detention basins. See, *e.g.*, *Patzner*, 133 Ill. 2d 540 (alleged a taking by the Secretary of Transportation where the Illinois Department of Transportation's construction machinery parked on adjacent property caused the landowner to relocate his business); *Herget*, 105 Ill. 2d 405 (plaintiff sought a writ of *mandamus* to compel the Director of Conservation to undertake eminent domain proceedings for compensation where government caused plaintiff's property to become submerged after it enlarged a lake); *Granite City*, 96 Ill. 2d 265 (property owner sought writ of *mandamus* to compel the Secretary of Transportation to institute eminent domain proceedings for the alleged taking and damaging of property due to construction of an adjacent roadway overpass); *Pratt*, 399 Ill. 247 (landowners sought a writ of *mandamus* to require the city, mayor, members of city council, Illinois Central Railroad Company, and the Director of Public Works and Buildings of the State of Illinois to file a petition to determine damages allegedly caused by a change in grade that was made in connection with the removal of an old viaduct); *Rigney*, 102 Ill. 64 (landowner brought suit against the city for damages to plaintiff's land allegedly caused by the city's construction of a viaduct or bridge). To constitute a government taking or

compensable government action, the water overflow must be the result of a structure or action imposed by the governmental entity, even if after *Arkansas Game & Fish* it is only a temporary invasion of the property. Compare *Herget*, 105 Ill. 2d 405 (affirming trial court's order for issuance of a writ of *mandamus* to compel eminent domain proceedings where the government submerged plaintiff's land by enlarging a lake), with *Sanguinetti*, 264 U.S. 146 (no taking found because landowner failed to show that overflow onto his land was causally connected to the government's canal construction rather than to increased seasonal flooding). In this case, the alleged flooding of the plaintiffs' land was from the overflow of drainage and detention basins, not from the City's actions.

¶ 34    Consequently, we find plaintiffs failed to state a cause of action against the City for inverse condemnation. We affirm the trial court's section 2-615 dismissal of count IV of the plaintiffs' complaint for inverse condemnation.

¶ 35                                                  CONCLUSION

¶ 36    The judgment of the circuit court of McDonough County is affirmed.

¶ 37    Affirmed.